IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COMPAGNIE DES GRANDS HOTELS d'AFRIQUE S.A., <br><br> Plaintiff, <br><br> v. <br><br> STARMAN HOTEL HOLDINGS LLC, <br><br> Defendant. | C.A. No.: 18-00654 RGA |

## **MEMORANDUM ORDER**

Plaintiff filed a Motion for Issuance of a Hague Convention Letter of Request to Obtain Evidence in Morocco. (D.I. 82). Defendant does not oppose this motion but does seek to add more evidence to the request. (D.I. 86). Plaintiff opposes these additions. (D.I. 89).

### I. Factual and Procedural History

On August 6, 2013, Plaintiff Compagnie des Grands Hotels d'Afrique S.A. ("CGHA") commenced an arbitration proceeding (the "Arbitration") through the International Chamber of Commerce ("ICC") against Woodman Maroc S.a.r.l. ("Woodman"), a former subsidiary of Starwood Capital Group Global I LLC ("SCG") and Defendant Starman Hotel Holdings LLC ("Starman"). (D.I. 82-1 at 4). CGHA contracted with an entity now known as Woodman approximately thirty years ago for the management of CGHA's Royal Mansour Hotel (the "Hotel"). (*Id.* at 3). The basis of the Arbitration was that, after Woodman was obtained by Meridian Group in 2005, Woodman failed to properly invest in the Hotel. (*Id.*). Ten months after CGHA commenced the Arbitration, Starman, which had obtained Woodman's parent company

1

and Woodman, sold them to a United Kingdom entity, Maquay Investments Ltd. ("Maquay"). (*Id.* at 4). Maquay then placed Woodman's parent into insolvency proceedings. (*Id.*). Woodman formally withdrew from the Arbitration, citing insolvency and inability to pay any judgment or award. (*Id.*). CGHA requested and received an interim order from the Arbitrators directing Woodman to (1) return possession and operation of the Hotel to CGHA, (2) account for payments it had made after ceasing to pay the minimum fee of the Arbitration award, and (3) cease making payments to third parties. (*Id.* at 4-5). CGHA was awarded approximately $60 million in damages from Woodman in the Arbitration. (*Id.* at 5). The Arbitrators also found that Starman had acted in the place of Woodman under the management agreement, that CGHA was led to believe that it could rely on Starman assuming all of Woodman's responsibilities under the agreement, and that Maquay had been formed solely to receive the shares of Woodman's parent and place it into voluntary liquidation. (*Id.*). The Arbitration award was recognized in a court tribunal in Morocco on December 14, 2016. (*Id.*).

The Arbitration award was against Woodman only. Because of the insolvency proceedings, Woodman is now unable or unwilling to pay the award. (*Id.*). CGHA brought the present action against Starman in order to collect the award from it. (D.I. 83 at 3). CGHA initially claimed that Starman could be held liable for Woodman's actions based either on agency theory or alter ego theory. (*Id.*). This Court dismissed the agency cause of action on January 9, 2019, but allowed CGHA to proceed with the alter ego claim. (*Id.* at 2).

CGHA filed a motion for the issuance of a letter of request to obtain discovery in Morocco. (D.I. 82). The request seeks evidence from seven entities and one individual: Woodman, PwC Maroc, FIDAB, FIGES, Société Générale, Abdelghani Hadri, KPMG and Fidaroc Grant Thornton ("FGT"). (*Id.* at 5-6). As this evidence is sought in Morocco, a letter of

2

request must be issued in accordance with the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"). (*Id.* at 1). Both the United States and Morocco are signatories to the Hague Convention. (*Id.*).

The issues addressed in this opinion are: (1) whether to issue a letter of request, pursuant to 28 U.S.C. § 1781, to obtain evidence in Morocco, and (2) if the letter of request is issued, what evidence to request from KPMG and FGT.

## II. Legal Standard

### a. Standard for the Issuance of Letters of Request

The parties in this case agree to the issuance of a letter of request to obtain evidence in Morocco. (D.I. 83 at 5-8). Further, both the United States and Morocco are signatories of the Hague Convention, indicating a mutual commitment to providing evidence for use in the other's legal proceedings. (D.I. 82 at 3). Courts "routinely issue such letters where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence." *Netherby Ltd. v. Jones Apparel Grp., Inc.*, 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005); *see Tulip Computers Intern. B.V. v. Dell Computer Corp.*, 254 F. Supp.2d 469, 474 (D. Del. 2003). The "burden is not great" for a party seeking a letter of request because "the Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the [Hague] Convention." *Tulip Computers Intern. B.V*, 254 F. Supp.2d at 474. However, "[w]here the relevancy or materiality of the [discovery] sought is doubtful, the court should not grant the application for letters of request." *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, 2013 WL 12203112, *3 (D.N.J. June 7, 2013) (quoting *United States v. Rosen*, 240 F.R.D. 204, 215 (E.D. Va. 2007)).

3

### b. The Alter Ego Theory

In order to prove alter ego liability, a plaintiff "must show (1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present." *Trevino v. Merscorp, Inc.*, 583 F. Supp.2d 521, 528 (D. Del. 2008). The second element requires plaintiffs to prove that defendants' "use of the corporate form would, if left unchecked, work as a fraud or something in the nature of a fraud." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 267 (D. Del. 1989). The evidence sought by the letters of request must relate to one of the two elements of alter ego liability.

### III. Discussion

#### a. Whether to Issue a Letter of Request

Both parties agree to the evidence requested of Woodman, PwC Maroc, FIDAB, FIGES, Société Générale, and Abdelghani Hadri. (*Id.*). The request of Woodman, the judgment-debtor, is for documents and communications regarding its dealings with Starman, its financial status, and its dealings with auditors. (D.I. 83 at 5). The request of PwC Maroc, a legal service provider, is for documents prepared and filed for Woodman. and for communications between PwC Maroc and Woodman and Woodman's parent company. (*Id.* at 5-6). The request of FIDAB, a legal service provider, is for documents prepared and filed for Woodman. (*Id.* at 6-7). The request of FIGES, a legal service provider, is for communications relating to Woodman's handover of the Hotel to CGHA and communications between FIGES and CGHA and CGHA's parent company. (*Id.* at 7). The request of Société Générale, a bank, is for materials showing Woodman's continued payments to third parties while failing to make minimum fee payments. (*Id.* at 7-8). The request of Hadri, the General Manager of the Hotel during a relevant period, is for communications between and among, and documents concerning, Woodman, Starman,

4

Starman's affiliates, Starwood Hotels, Maquay, and/or Woodman's auditors and communications between Hadri and Woodman and Woodman's parent company. (*Id.*).

Where the parties agree as to the issuance of the letters of request, CGHA has made a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence regarding the alter ego theory. Therefore, the requests of Woodman, PwC Maroc, FIDAB, FIGES, Société Générale, and Abdelghani Hadri are granted and will be issued. Further, the request of KPMG for documents prepared and filed for Woodman during the timeframe where Woodman was managing the Hotel and communications between KPMG and CGHA and CGHA's parent company is granted and will be issued. The request of FGT for documents relating to the handover of the Hotel is granted and will be issued.

### b. KPMG

The parties disagree as to the aspects of the requests to be issued to KPMG. (*Id.* at 6; D.I. 86 at 4-6; D.I. 89 at 2-5).

CGHA's undisputed request of KPMG, Woodman's auditor from at least 2006-2007, is for documents prepared and filed for Woodman during that timeframe. (D.I. 83 at 6). Starman's undisputed request of KPMG is for communications between KPMG and CGHA and CGHA's parent company. (*Id.*). The parties disagree solely with regards to Starman's request to extend the timeframe, at least as far back as 2001. (D.I. 86 at 5; D.I. 89 at 3).

Starman wants to issue a request to KPMG for documents going back as far as KPMG worked with the Hotel. CGHA opposes this extension.

Starman's reasons for extending the timeframe are that the evidence (1) could support its equitable defenses, (2) could refute fraud, injustice, or unfairness in its use of the corporate form, (3) could show whether and how the Hotel's finances changed after the handover, (4) could show

5

funds that could have been siphoned off, (5) could show that the previous manager had not invested in renovations in over eight years, and (6) could show that there was no resultant harm. (D.I. 86 at 3-6). Starman's equitable defenses are that (1) it was not a party to the Arbitration and was therefore unable to present any defenses before the arbitrators, (2) the New York Convention does not permit arbitration awards to be enforced against parties not named in the award, (3) that CGHA failed to comply with the prerequisites for enforcing an arbitration award under the New York Convention, (4) that the management agreement with Starwood Hotels was commercially reasonable, (5) that the sale of Woodman's parent to Maquay was on commercially reasonable terms, (6) that the decline in Woodman's financing performance was not caused by Starman, and (7) that Starman did not siphon off any assets from Woodman that could have been used to satisfy the Arbitration award. (D.I. 82-1 at 5-6).

CGHA argues that the timeframe should be restricted to the period during which Woodman was managing the hotel because the extension (1) would constitute a collateral attack, (2) would yield irrelevant information, (3) would be a fishing expedition, and (4) is seeking to undermine the arbitration judgment. (D.I. 89 at 3-5).

Because the disputed evidence does not appear to be relevant either to rebutting CGHA's case or to establishing any of the equitable defenses, Starman's request for an extra five years of discovery is DENIED.

c. **FGT**

The parties disagree as to whether to request of FGT engagement letters concerning work that it did or documents that it prepared for CGHA concerning the Hotel. (D.I. 83 at 8; D.I. 86 at 6-7; D.I. 89 at 5-7).

6

CGHA has no request of FGT, its advisor during the handover of the Hotel. (D.I. 83 at 8). Starman requested documents from FGT relating to the handover of the Hotel, and CGHA agreed to this request. (D.I. 86 at 6). However, CGHA does not agree to the issuance of a request of FGT for engagement letters concerning work that it did or documents that it prepared for CGHA concerning the Hotel. (*Id.* at 6-7; D.I. 89 at 6-7).

Starman argues that this additional request is appropriate because (1) it would not burden or prejudice CGHA, (2) it could support Starman's equitable defenses, and (3) it could refute the claim that there was fraud, injustice, or unfairness in Starman's use of the corporate form. (D.I. 86 at 6-7). The equitable defenses are the same as those mentioned above with regards to the KPMG dispute. (D.I. 82-1 at 5-6).

CGHA argues that this request should not be added to the letter of request because (1) it is irrelevant to the alter ego theory, (2) what is relevant to the alter ego theory is duplicative, (3) it is overbroad, and (4) FGT was an advisor to CGHA, meaning that there is no basis to think that it would possess any information relevant to the alter ego theory. (D.I. 89 at 6-7).

It is unclear how engagement letters from an advisor to CGHA would provide any information relevant to Starman's possible alter ego liability for Woodman's conduct. The engagement letters are plainly irrelevant to the equitable defenses. Therefore, Starman's request for the engagement letters is DENIED.

### IV. Conclusion

For the foregoing reasons, CGHA's motion for issuance of a letter of request will be GRANTED. Starman's proposed alterations are DENIED.

IT IS SO ORDERED this 15 day of July 2019.

Richard G. Andrews
United States District Judge

7