IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

COMPAGNIE DES GRANDS HÔTELS ) 
D'AFRIQUE S.A., )
 )
            Plaintiff, )
 )
      v. )
 )    Civil Action No. 18-654-SB-SRF
STARWOOD CAPITAL GROUP )
GLOBAL I LLC and STARMAN HOTEL )
HOLDINGS LLC, )
 )
            Defendants. )

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Presently before the court in this action to enforce a foreign arbitration award arising from an alleged breach of contract is a motion for leave to file an amended complaint pursuant to Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4) and Local Rule 15.1, filed by plaintiff Compagnie des Grands Hôtels d'Afrique S.A. ("CGHA").  (D.I. 180)  For the reasons that follow, CGHA's motion is GRANTED-IN-PART and DENIED-IN-PART without prejudice.[1]

---

[1] The briefing for plaintiff's motion is as follows:  plaintiff's opening brief (D.I. 181), defendant's answering brief (D.I. 190), and plaintiff's reply brief (D.I. 193).  Plaintiff's counsel also filed a declaration in support of plaintiff's reply brief.  (D.I. 194)

## II.    BACKGROUND

### a.    Facts[2]

CGHA owns a luxury hotel in Casablanca, Morocco, called the Royal Mansour Hotel ("the Hotel").  (D.I. 180, Ex. A at ¶ 2)  In 1989, CGHA entered into a management agreement ("the Management Agreement") with an international hotel group ("the Hotel Manager"), who was to manage the Hotel for thirty-five years.  (*Id.*)  The Management Agreement required the Hotel Manager to make quarterly rent payments to CGHA and maintain the Hotel at international five-star standards.  (*Id.*)  By 2005, Le Meridien Group ("Meridien") had become the owner of the Hotel Manager.  (*Id.* at ¶ 3)  That year, in a joint venture with Lehman Brothers, an investment bank, defendant Starwood Capital Global I LLC ("Starwood Capital") formed defendant Starman Hotel Holdings LLC ("Starman") for the purpose of acquiring some Meridien properties, including the Hotel Manager.  (*Id.* at ¶¶ 3, 27)

As a result of the acquisition, Starman indirectly owned Woodman Maroc S.a.r.l. ("Woodman"), who became the Hotel Manager.  (*Id.*)  A condition of the acquisition required Woodman to enter into an operating agreement with Starwood Hotels & Resorts Worldwide, Inc. ("Starwood Hotels"), then an affiliate of Starwood Capital.  (*Id.* at ¶ 4)  Under the operating agreement, Woodman delegated operating authority of the Hotel to Starwood Hotels, who agreed to exercise such authority for a fee.  (*Id.* at ¶¶ 5–6)  Starwood Capital and Lehman Brothers entered into a limited liability agreement, which "gave Starwood Capital approval rights over

---

[2] Judge Andrews' Memorandum Order issued on January 9, 2019 (D.I. 38), *Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Capital Group Global I LLC*, C.A. No. 18-654-RGA, 2019 WL 148454 (D. Del. Jan. 9, 2019) ("*Starwood I*") thoroughly describes the factual background of this case, which is hereby incorporated.  The facts in this section are based on the allegations in CGHA's proposed amended complaint, which the court accepts as true for the purposes of the pending motion for leave to amend.  *See Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007).

certain property-level decisions that had been retained by the hotel properties under their operating agreements with Starwood Hotels." (*Id.* at ¶ 7)  Starwood Capital's approval rights were exclusive and included control over capital expenditures at the Hotel.  (*Id.*)

At Starwood Capital's direction, Starman provided funding to Woodman for only bare minimum expenses at the Hotel, which led to the deterioration of the Hotel's physical condition. (*Id.* at ¶¶ 9–11)  In 2012, Starwood Capital directed Starman cause Woodman to cease paying rent to CGHA while continuing to pay the operating fees that Woodman owed to Starwood Hotels.  (*Id.* at ¶ 11)

In August 2013, CGHA initiated an arbitration against Woodman before the ICC International Court of Arbitration in London, England ("the ICC") for breach of the Management Agreement.  (*Id.* at ¶ 13)  As the arbitration advanced, Starwood Capital and Starman planned to sell Woodman so that Starwood Capital and Starman could avoid future liabilities and losses. (*Id.* at ¶ 14)  Desmond Taljaard ("Taljaard"), a former Starwood Capital executive, agreed to purchase some Starman properties, including Woodman, through what would be a newly established entity.  (*Id.* at ¶ 15)  Starwood Capital's CEO, Barry Sternlicht ("Sternlicht") approved the of the planned transaction.  (*Id.* at ¶¶ 4, 16)  Later, however, Taljaard decided against dealing with Starman directly and recruited Sarah Purdy ("Purdy") to do so instead.  (*Id.* at ¶ 17)  On May 7, 2014, Sarah Purdy ("Purdy") created Maquay Investments Limited ("Maquay").  (*Id.*)  On June 19, 2014, Maquay purchased some Starman subsidiaries, including Woodman, for €100.  (*Id.* at ¶ 18)  Minutes after the Maquay-Starman transaction, Taljaard caused a separate entity to purchase the only two former-Starman subsidiaries from Maquay that had any value.  (*Id.*)  In August 2014, Maquay initiated insolvency proceedings for Woodman's parent company and caused Woodman's withdrawal from the arbitration.  (*Id.* at ¶ 19)

3

On May 6, 2015, the ICC issued an arbitration award in CGHA's favor against Woodman, amounting to $59,400,000 plus interest (the "Arbitration Award"), which continues to accrue. (*Id.* at ¶¶ 20–22) To date, Woodman has not paid any part of the Arbitration Award to CGHA. (*Id.* at ¶ 22)

### b. Procedural History

On April 30, 2018, CGHA filed a complaint (the "original complaint") in the District of Delaware against Starman and Starwood Capital to enforce the arbitration award against Woodman. (D.I. 1) The original complaint alleged that Starman is liable for payment of the Arbitration Award due from Woodman based upon an alter ego theory. (*Id.*) The original complaint also alleged that Starman and Starwood Capital are liable for payment of the Arbitration Award against Woodman based upon an agency theory. (*Id.*) Starman and Starwood Capital moved to dismiss the original complaint in its entirety for failure to state a claim upon which relief could be granted, which the court granted-in-part and denied-in-part on January 9, 2019. (D.I. 15; D.I. 38) The court granted the motion to dismiss the agency theory claims against Starman and Starwood Capital[3] and denied the motion to dismiss CGHA's remaining

---

[3] The original complaint alleged that Starman should be liable for a judgment against Woodman because "Starman assumed responsibility under the Management Agreement, had overlapping management with Woodman, and spoke 'for and on behalf of Woodman.'" *Starwood I*, 2019 WL 148454, at *6 (quoting D.I. 1 at ¶ 122). The court dismissed the agency theory claim against Starman because neither Starman's alleged assumption of Woodman's responsibility under the Management Agreement nor an overlap in management between the two was sufficient to show that Starman controlled Woodman. *Id.* In addition, the claim that Starman spoke "for and on behalf of Woodman" was insufficient to allege an agency theory because "the correct inquiry is whether Woodman spoke for or was acting on behalf of, or was directed by, Starman, not vice-versa." *Id.* The original complaint also contained an agency theory claim against Starwood Capital based on the theory that it controlled Starman and Starman controlled Woodman. *See id.* at *7. The court dismissed CGHA's agency theory claim against Starwood Capital because CGHA "failed to establish Starman controlled or directed Woodman," and GCHA "would need both levels in the chain to establish that Woodman was Starwood Capital['s] agent." *Id.* As a result, Starwood Capital was dismissed from the case. *Id.*

alter ego theory claim against Starman, the only remaining defendant.[4]  *Starwood I*, C.A. No. 18-654-RGA, 2019 WL 148454, at *7 (D. Del. Jan. 9, 2019).

The court entered a scheduling order on March 12, 2019, which included a September 30, 2019 deadline for amending pleadings and joining parties.  (D.I. 48)  On September 13, 2019, CGHA filed a motion to amend the scheduling order, limited to a request to extend the deadline for amending pleadings and joining parties from September 30, 2019 to January 31, 2020.  (D.I. 125)  The court denied CGHA's motion without prejudice.  *Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Capital Group Global I LLC*, C.A. No. 18-654-RGA-SRF, 2019 WL 4740083, at *3 (D. Del. Sept. 27, 2019) ("*Starwood II*").

On March 9, 2020, CGHA filed the present motion for leave to file an amended complaint (the "amended complaint").  (D.I. 180).  The amended complaint proposes to correct the deficiencies from the original complaint concerning the agency theories dismissed by the court against Starman and Starwood Capital.  (D.I. 180, Ex. A)  The amended complaint retains the theory that Woodman is the alter ego of Starman but proposes, in the alternative, if not an alter ego, that Woodman is the agent of Starman.  (*See id.* at ¶¶ 168, 186)  The amended complaint also realleges a claim against Starwood Capital.  (*Id.* at ¶¶ 190–207)  It avers that Starman is the agent of Starwood Capital and claims, therefore, that Starwood Capital is liable for the Arbitration Award because (1) Woodman is the agent or alter ego of Starman, and (2) Starman is the agent of Starwood Capital.  (*See id.* at ¶¶ 192–93)  Lastly, the amended complaint seeks to add a tortious interference claim against Starwood Capital in the alternative, alleging

---

[4] The original complaint also alleged that Starman should be liable for a judgment against Woodman because Woodman was the alter ego of Starman.  (D.I. 1 at ¶ 111)  The court denied Starman's motion to dismiss this alter ego theory because the original complaint sufficiently alleged "insolvency, failure to observe corporate formalities, siphoning of funds, and facade, and properly pled evidence of fraud or injustice."  *Starwood I*, 2019 WL 148454, at *5.

that Starwood Capital should be liable for the Arbitration Award against Woodman because it tortiously interfered with the Management Agreement between CGHA and Woodman.  (*Id.* at ¶¶ 198–207)

On March 17, 2020, the parties jointly requested a stay of this litigation in light of COVID-19, which the court granted.  (D.I. 186; D.I. 187)  In the subsequent months, the parties updated the court about the status of the case and submitted renewed requests to extend the stay, which the court repeatedly granted.  (D.I. 196; D.I. 197; D.I. 198; D.I. 199, D.I. 200; D.I. 201; D.I. 202; D.I. 203; D.I. 204)  On September 22, 2020, the parties filed a joint stipulation, which the court ordered, amending the scheduling order and recommencing the litigation.  (D.I. 205; D.I. 206)  The fact discovery deadline was extended to March 26, 2021, but the deadline to amend pleadings remained September 30, 2019.  (D.I. 206)  On September 30, 2020, CGHA filed an unopposed motion to amend the scheduling order limited to extending the pretrial conference date to February 18, 2022, and scheduling trial for March 7, 2022, through March 10, 2022, which the court ordered.  (D.I. 208; D.I. 209)

On December 8, 2020, the parties filed another joint stipulation, which the court ordered on December 9, 2020, further amending the scheduling order.  (D.I. 210; D.I. 211)  Pursuant to the court's order, depositions may occur on or after May 3, 2021, up to the completion of fact discovery.  (D.I. 211 at ¶ 2(a))  All other deadlines set forth in the amended scheduling order (D.I. 209), including the fact discovery cut-off, the deadline to file case dispositive motions, and the previously scheduled trial and a pre-trial conference, have been vacated and deferred until after the completion of fact discovery.  (D.I. 211 at ¶ 1)  The parties will submit a revised scheduling order, which will set deadlines for this case through the completion of discovery, within ten (10) business days of the occurrence of the first non-Hague Convention deposition

6

taken pursuant to paragraph 2(a) of the court's December 9, 2020 order. (*Id.* at ¶ 2(b)) However, the deadline to amend pleadings remains September 30, 2019 (*Id.* at ¶ 3), as set forth in the "Initial Scheduling Order" (D.I. 48). (*See* D.I. 209; D.I. 211 at ¶ 3)

## III.    LEGAL STANDARD

### a.    Federal Rules of Civil Procedure 15 and 16

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

If a party seeks leave to amend after a deadline imposed by the scheduling order, the court must apply Rule 16 of the Federal Rules of Civil Procedure. *See WebXchange Inc. v. Dell Inc.*, C.A. No.08-132-JJF, 2010 256547, at *2 (D. Del. Jan. 20, 2010). A court-ordered schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The good cause element requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 618 (D. Del. 2008). The focus of the "good cause" inquiry is, therefore, on diligence of the moving party, rather than on prejudice, futility, bad

faith, or any of the other Rule 15 factors.  *See Glaxosmithkline LLC v. Glenmark Pharms. Inc.*, C.A. No. 14-877-LPS-CJB, 2016 WL 7319670, at *1 (D. Del. Dec. 15, 2016).  Only after having found the requisite showing of good cause will the court consider whether the proposed amended pleading meets the Rule 15(a) standard.  *See E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000).

## IV. DISCUSSION

### a. Good Cause

CGHA argues that good cause exists to amend because it has diligently pursued its case and discovered the facts underlying its new theories and claims via discovery that occurred after the deadline to amend pleadings.  (D.I. 181 at 3)  Starman argues that good cause is lacking and that CGHA was not diligent because as of September 13, 2019, CGHA has possessed the Starman LLC Agreement and the REOC Letter,[5] two documents Starman argues are foundational to CGHA's amended complaint.  (D.I. 190 at 2–3, 10–11)

Good cause exists for CGHA to file an amended complaint under Rule 16(b)(4).  "Good cause exists when the schedule cannot reasonably be met despite the diligence of the party seeking the extension."  *Home Semiconductor Corp. v. Samsung Elecs. Co., Ltd.*, C.A. No. 13-2033-RGA-SRF, 2019 WL 2135858, at *3 (D. Del. May 16, 2019) (internal citations and

---

[5] The Starman LLC Agreement sets forth Starman's "formal governance structure" whereby, *inter alia*, "Starman would be governed by a management committee composed of three Starwood Capital investor representatives and three Lehman Brothers investor representatives." (D.I. 180, Ex. A at ¶ 83)  The REOC Letter is an agreement between Woodman and SOF European, an entity created by Starwood Capital to hold the interest in investments made on behalf of Starwood Capital investment funds.  (*Id.* at ¶¶ 46–47)  In the REOC Letter, Woodman granted SOF European "control over budgeting for, and implementation of, capital expenditures for repairs, maintenance, and improvements at the Hotel."  (*Id.* at ¶ 53)  Through the Starman LLC Agreement and the REOC Letter "Starwood Capital possessed exclusive authority over Woodman's capital expenditures at the Hotel, and Starwood Capital unilaterally exercised that authority through Starman."  (*Id.* at ¶ 85)

quotations omitted). CGHA received a document production on November 29, 2019 and deposed Sternlicht on December 17, 2019, both of which provided CGHA with information underlying the allegations in the amended complaint after the deadline to amend pleadings had passed. (D.I. 181 at 3; D.I. 194 at ¶¶ 4, 14). On March 9, 2020, less than three months after Sternlicht's deposition, CGHA moved for leave to file an amended complaint. *See Home Semiconductor*, 2019 WL 2135858, at *5 ("other courts in the Third Circuit have found diligence when a party has sought leave to amend within three months of learning new information") (citing *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 2017 WL 1001602, at *6 (W.D. Pa. Mar. 15, 2017)).

Starman argues that CGHA failed to bring a motion for leave to amend until more than six months after first possessing the Starman LLC Agreement and the REOC Letter Agreement and, therefore, acted with undue delay. [6] (D.I. 190 at 10) Starman bases its argument, at least in part, on an allegation in the amended complaint stating that "[p]ursuant to the Starman LLC Agreement and the REOC Letter Agreement, Starwood Capital possessed exclusive authority over Woodman's capital expenditures at the Hotel, and Starwood Capital unilaterally exercised that authority through Starman." (D.I. 180, Ex. A at ¶ 85; D.I. 190 at 10) However, the fact that CGHA possessed these agreements before the deadline to amend pleadings passed is not automatically determinative of good cause. *See Heritage Handoff Holdings, LLC v. Fontanella*, C.A. No. 16-691-RGA, 2018 WL 3580288, at *1 (D. Del. July 25, 2018) (finding good cause to amend under Rule 16(b) despite the fact that the movant "possessed at least some of the relevant

---

[6] CGHA does not dispute that it received a copy of the Starman LLC Agreement on August 30, 2019, but highlights that it did not receive the schedules and exhibits associated with the Starman LLC Agreement until November 11, 2019. (D.I. 193 at 2)

facts and documents prior to the expiration of the deadline to amend" because the movant had

"acted diligently once he became aware of the issues underlying his proposed amendments").

In addition, Starman's argument fails to recognize the complete history of discovery and

the breadth of the allegations in the amended complaint.  Many allegations in the amended

complaint are based on discovery produced after the deadline to amend pleadings had passed,

outside of the Starman LLC Agreement and the REOC Letter Agreement.  (D.I. 181 at 3, 7–10;

D.I. 194 at ¶¶ 9, 14)  Starman does not dispute that documents it produced on November 29,

2019, and Sternlicht's December 17, 2019 deposition provided CGHA with information for the

first time regarding, *inter alia*, Sternlicht's personal involvement in decisions related to Starman

and Woodman, and Starwood Capital's involvement in Woodman's insolvency filing.  (*See* D.I.

190; D.I. 194 at ¶¶ 9, 11, 14; D.I. 180, Ex. A at ¶¶ 121, 123, 127–29, 132)

Contrary to Starman's argument, CGHA has demonstrated diligence in filing the motion

for leave to amend on March 9, 2020.  For example, CGHA diligently pursued Sternlicht's

deposition.  On July 18, 2019, CGHA noticed the deposition of Sternlicht, a non-party to this

litigation, and requested that the deposition occur on August 14, 2019.  (D.I. 107)  On September

19, 2019, after Sternlicht refused to voluntarily appear for a deposition, CGHA sought to amend

the scheduling order so that, *inter alia*, CGHA could eventually depose him before the deadline

to amend pleadings.  (D.I. 125)  The court denied CGHA's motion without prejudice because, in

part, the District of Connecticut had not yet ruled on CGHA's then-pending motion to compel

Sternlicht's deposition.  *Starwood II*, C.A. No. 18-654-RGA-SRF, 2019 WL 4740083, at *2 (D.

Del. Sept. 27, 2019).  Later, the District of Connecticut ruled in CGHA's favor and compelled

Sternlicht's deposition, which occurred on December 17, 2019.  *See Compagnie des Grands*

*Hôtels d'Afrique v. Starman Hotel Holdings LLC*, C.A. No. 19-1859-KAD, D.I. 37 (D. Conn.

Nov. 22, 2019).  In addition, Starman does not dispute that CGHA received over 5,000 documents on November 29, 2020, some of which form the basis of allegations in the amended complaint as discussed above.  (D.I. 190; D.I. 194 at ¶ 4)

Under the circumstances presented, the court concludes that December 17, 2019, the date of Sternlicht's deposition, not September 13, 2019, as Starman argues, is the proper date from which to determine whether CGHA unduly delayed in bringing the present motion.  Considering the volume of documents CGHA had to review and CGHA's pursuit of Sternlicht's deposition, the court concludes that CGHA has been diligent and has met the Rule 16(b) "good cause" standard in seeking leave to amend.  *See Home Semiconductor*, 2019 WL 2135858, at *5 (citing *Logan*, 2017 WL 1001602, at *2; *TC Tech. LLC v. Sprint Corp.*, C.A. No. 16-153-RGA, 2019 WL 529678, at *2 (D. Del. Feb. 11, 2019) (finding good cause to amend where a deposition fourteen months after the deadline to amend pleadings provided new information and the movant filed a motion for leave just over two months after the deposition).

Having concluded that good cause exists for CGHA to amend its complaint, the court considers whether the motion for leave to amend satisfies the Rule 15(a) factors.  *See Mahan*, 225 F.3d at 340.

**b. Undue Delay and Prejudice**

Prejudice to the nonmovant occurs when "allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent [a party] from bringing a timely action in another jurisdiction." *Intellectual Ventures I LLC v. Toshiba Corp.*, C.A. No. 13-453-SLR, 2016 WL 4690384, at *1 (D. Del. Sept. 7, 2016) (quoting *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)).  Delay alone is an insufficient reason to deny leave to amend;

delay must be coupled with undue prejudice to the nonmovant resulting from granting a motion for leave to amend.  *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citing *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n.*, 573 F.2d 820, 823 (3d Cir. 1978)).  To show undue prejudice, a nonmovant must demonstrate that it will be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence" if leave to amend is granted.  *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (internal quotations and citations omitted).

Starman argues that it and Starwood Capital would be unfairly prejudiced by CGHA's proposed tortious interference claim because allowing such a claim would create a need for additional discovery, extension of scheduling order deadlines, and a delay of the trial date.[7]  (D.I. 190 at 3, 19–20)  In response, CGHA argues that, as of the date CGHA filed the pending motion, fact discovery remained open.  (D.I. 193 at 10)  CGHA argues that under Third Circuit and District of Delaware case law and the circumstances presented, no unfair prejudice exists.  (*Id.*)

Allowing CGHA to amend in whole or in part would not unfairly prejudice Starman or Starwood Capital.  The discovery schedule has been extended for reasons unrelated to the pending motion for leave to amend.  The fact discovery deadline is currently undetermined but will likely be after May 3, 2021,[8] giving the parties a minimum of almost three full months from the date of this decision to complete any additional discovery regardless of whether amendment

---

[7] CGHA's proposed tortious interference claim relates only to Starwood Capital.  (D.I. 180, Ex. A at ¶¶ 199–207)  CGHA admits that it "does not intend to pursue this [tortious interference] claim if it is allowed to proceed" with its agency theory claim against Starwood Capital, which undermines Starman's argument related to the burden created by additional discovery and a delay of trial.  (D.I. 193 at 8 n.3)

[8] As described in section II.b, *supra*, the scheduling order was recently amended in this case as a result of multiple joint requests for stays that had been granted in light of the ongoing pandemic. (D.I. 210; D.I. 211)  When CGHA filed the pending motion on March 9, 2020, the fact discovery deadline under the operative scheduling order, (D.I. 48), had been March 31, 2020.

is permitted.  (D.I. 211 at ¶ 2)  In addition, CGHA has explained the reasons for its delay—it had to cull through over 5,000 documents and depose Sternlicht after the deadline to amend pleadings.  (D.I. 181 at 8–9, 12–14)  Starman cites no authority suggesting that unfair prejudice would result where a defendant would have almost three months to conduct discovery to respond to a proposed amended complaint without needing to adjust the current scheduling order.  (D.I. 190)  Instead, Starman cites *Asahi Glass Co. v. Guardian Indus. Corp.*, 276 F.R.D. 417, 420 (D. Del. 2011).  However, the procedural posture in *Asahi Glass* renders its outcome unpersuasive here.  *See Asahi Glass*, 276 F.R.D. at 420 (denying leave to amend where the moving defendant had not explained its months' long delay in seeking leave to add counterclaims after the close of fact discovery, necessitating the re-opening of discovery to allow the plaintiff to respond to the proposed counterclaims and further delaying the trial date).  Starman has not demonstrated that allowing the proposed amendments would (1) require it or Starwood Capital "to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent [a party] from bringing a timely action in another jurisdiction."  *See Intellectual Ventures*, 2016 WL 4690384, at *1 (quoting *Long*, 393 F.3d at 400).  Therefore, Starman has failed to establish unfair prejudice.  *See id.*

### c.  Futility

Starman argues that the motion for leave to amend should be denied because the three proposed amendments to the complaint are futile.  (D.I. 190 at 11–18)  Starman argues the additional claims in the amended complaint fail to state a claim under Fed. R. Civ. P. 12(b)(6).  (*Id.*)  The standard for assessing the futility of an amendment under Fed. R. Civ. P. 15(a) is the same standard of legal sufficiency applicable under Fed. R. Civ. P. 12(b)(6).  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 878 (3d Cir. 2018) (quoting *In re Burlington*

*Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Specifically, the amended

pleading must fail to state a claim upon which relief could be granted even after the district court

"tak[es] all pleaded allegations as true and view[s] them in a light most favorable to the

plaintiff." *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007); *see also Great W.*

*Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).

### i. Count II – Starman Agency Theory[9]

Starman argues that Count II of the amended complaint, a claim alleging that Starman is

liable to CGHA because Woodman acted as Starman's agent, fails to state a legally sufficient

claim. (D.I. 190 at 11–14) A principal-agent relationship exists where the principal controls the

agent. *Starwood I*, 2019 WL 148454, at *5 (quoting *Japan Petroleum Co. (Nigeria) Ltd. v.*

*Ashland Oil, Inc.*, 456 F. Supp. 831, 841 (D. Del. 1978)). A parent corporation controls a

subsidiary "where the subsidiary acts on the parent's behalf or at the parent's direction." *Id.*

(quoting *C.R. Bard Inc. v. Guidant Corp. & Advanced Cardiovascular Sys., Inc.*, 997 F. Supp.

556, 560 (D. Del. 1998)). The parent must exercise "actual, participatory, and total" control over

the subsidiary but "total domination" is not required. *Id.* (internal citations omitted).

First, Starman argues that the amended complaint lacks factual allegations showing that

Starman controlled Woodman. (D.I. 190 at 12–13) Starman's argument fails because the

amended complaint contains several factual allegations describing Starman's "actual,

participatory, and total" control over Woodman. *See Starwood I*, 2019 WL 148454, at *5

(quoting *Japan Petroleum*, 456 F. Supp. at 841). As the court articulated previously, "in order to

---

[9] The court has already determined that Count I of the original complaint, which is not
substantially changed in the amended complaint, sufficiently pled a claim against Starman under
an alter ego theory. *Starwood I*, 2019 WL 148454, at *3–5 (D. Del. Jan. 9, 2019). The amended
complaint brings a new theory of agency liability against Starman, in the alternative. (D.I. 180,
Ex. A at ¶¶ 186–89)

prove agency, [CGHA] must show that Woodman's failure to maintain the Hotel to a five-star standard and failure to meet the payment obligations were due to [Starman's] control, that is, were done on behalf of [Starman] or at [its] direction." *Id.* The court noted that "the correct inquiry is whether Woodman spoke for or was acting on behalf of, or was directed by, Starman, not vice-versa." *Id.* at *6.

The amended complaint attempts to correct the original improperly pleaded inverse agency relationship by alleging that "Starman dominated and controlled Woodman and its finances and caused Woodman to breach the Management Agreement with CGHA." (D.I. 180, Ex. A at ¶ 23) The amended complaint alleges specifically that Thierry Drinka ("Drinka") was simultaneously a "a Starwood . . . representative on Starman's management committee and a manager of Woodman." (*Id.* at ¶ 69) Drinka repeatedly wrote to CGHA, representing himself as the face of Woodman and using Woodman letterhead, to communicate that Starman would not forfeit possession of the hotel on terms CGHA would accept and to assert that Woodman was not in breach of the Management Agreement. (*Id.* at ¶¶ 69, 125) At the time, Starman's goal was to "placate and delay." (*Id.* at ¶ 68) Drinka communicated with CGHA as a purported Woodman representative to carry out Starman's goal of delay. (*Id.* at ¶¶ 125–26) At the pleading stage, the amended complaint's allegations that Drinka, a member of Starman's management committee, repeatedly communicated with CGHA on behalf of Starman using Woodman letterhead demonstrates Starman's actual participation in the control of Woodman. *See Starwood I*, 2019 WL 148454, at *5. Therefore, CGHA's agency theory claim against Starman is not futile.

Second, Starman argues that CGHA's Starman-Woodman principal-agent theory fails as alleged because the operating agreement gave Starwood Hotels exclusive control over the Hotel's accounts, and income from the Hotel was disbursed only after Starwood Hotels collected

its fees.  (D.I. 190 at 13–14)  As a result, Starman argues, CGHA's theory that Starman controlled Woodman's breach fails because "payment from the Hotel to Starwood Hotels under the Operating Agreement required no action—and could not have been prevented—by Starman or Woodman."  (*Id.* at 14)  Starman's argument is inappropriate at the pleading stage.  *See Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, C.A. No. 13-1741-RGA, 61 F. Supp. 3d 391, 400 (D. Del. 2014) ("[Q]uestions involv[ing] disputed issues of fact and contract interpretation [are] not suitable to resolution on a motion to dismiss.").  The proposed amended complaint contains plausible allegations that Starman used its control over Woodman to starve the Hotel of the contractually required level of investment leading to Woodman's breach of the Management Agreement.  (D.I. 180, Ex. A at ¶¶ 5, 10, 74, 93)

Finally, Starman points to several pleading deficiencies that Judge Andrews identified when he granted Starman's motion to dismiss portions of the original complaint.  (D.I. 190 at 14)  Starman's argument fails to address the new allegations in the amended complaint, which resolve the deficiencies Judge Andrews identified with respect to the original complaint.  *See Starwood I*, 2019 WL 148454, at *6 (concluding that overlapping management was insufficient to show control for agency purposes).  For example, the amended complaint does not rely on overlapping management to allege an agency relationship.  (D.I. 180, Ex. A)  As stated above, the amended complaint contains plausible allegations that Drinka repeatedly communicated with CGHA on behalf of Starman using Woodman letterhead, which demonstrates Starman's actual participation in the control of Woodman.  *See Starwood I*, 2019 WL 148454, at *5.  Therefore, CGHA's alternative agency theory claim against Starman is not futile.

### ii.  Count III – Starwood Capital Agency Theory

Starman also argues that Count III of the amended complaint, an agency theory of liability claim against Starwood Capital, fails to state a legally sufficient claim.  (D.I. 190 at 12–13)  As CGHA notes, the amended complaint addresses the deficiencies that Judge Andrews identified when he dismissed CGHA's agency theory claim against Starwood Capital in the original complaint.  *Starwood I*, 2019 WL 148454, at *7 ("Since [CGHA] failed to establish Starman controlled or directed Woodman, it cannot proceed against [Starwood Capital] by claiming it controlled Starman.  [CGHA] would need both levels in the chain to establish that Woodman was [Starwood Capital's] agent.").  Count III of the amended complaint states a legally cognizable agency theory claim against Starwood Capital based on a two-tiered agency structure.  (D.I. 193 at 4–7)  The first tier is primarily based on an alter ego relationship between Starman and Woodman.[10]  (*Id.* at 5)  The second tier is based on a theory that Starman acted as Starwood Capital's agent.  (*Id.*)

For the first tier, the Starman-Woodman principal-agent tier, Starman does not challenge CGHA's theory that Woodman acted as an alter ego of Starman, a theory Judge Andrews previously accepted, and which is realleged in the amended complaint.  (D.I. 190; D.I. 180, Ex. A at ¶¶ 58–81)  Starman cites no authority that such a relationship could not serve as the first tier of a multi-tier agency theory of liability against Starwood Capital.  (D.I. 190)

---

[10] The distinction between the agency theory proffered against Starwood Capital in the original complaint compared to the theory presented in the amended complaint lies in the first tier of CGHA's theory of liability.  (D.I. 193 at 5)  In the original complaint, Count III relied on a two-tiered agency theory: (1) Woodman acted as Starman's agent, and (2) Starman acted as Starwood Capital's agent.  (*Id.*)  The amended complaint alleges, instead, that the "primary" first tier is based on the theory that Woodman was Starman's alter-ego.  (*Id.*)  In the alternative, the amended complaint alleges that the first tier could also be a Starman-Woodman principal-agent relationship.  (*Id.* (citing D.I. 180, Ex. A at ¶¶ 191–92))

For the second tier, the Starwood Capital-Starman principal-agent tier, the amended complaint contains plausible factual allegations that "Starwood Capital arranged with Starman that Starman would act on Starwood Capital's behalf with respect to domination and control of Woodman's finances, and this arrangement related directly to Woodman's breaches of the Management Agreement." (D.I. 180, Ex. A at ¶ 192) For example, on April 19, 2007, Chris Brill-Edwards ("Brill-Edwards"), a Starwood Capital executive responsible for construction projects in Europe, "became the Capex Project Manager for Starman's hotel properties, which included control over Starman's funding for capital expenditures at the hotel properties." (*Id.* at ¶¶ 90, 100–07) "Brill-Edwards routinely dictated what funding Starman could provide for capital expenditures at the Hotel." (*Id.* at ¶ 103) On June 26, 2007, a Starman employee emailed Woodman's Director of Finance stating that Woodman would have to pay for an engineering survey commissioned by Brill-Edwards. (*Id.* at ¶ 103(a)) Later, in 2008, Brill-Edwards emailed a Starman employee with instructions to "cancel the December cash flow for [the Hotel]." (*Id.* at ¶ 103(c)) These allegations plausibly allege that Starman served as agent for Starwood Capital with respect to Woodman's failure to adequately invest in the Hotel. Simply stated, the allegations present a theory that Woodman was strategically used by Starman, acting as the agent of Starwood Capital, to deprive CGHA of rent while paying, *inter alia*, Starwood Hotels' operating fees. Therefore, CGHA's two-tiered agency theory claim against Starwood Capital is not futile. Accordingly, CGHA's motion for leave to file an amend complaint is granted with respect to proposed Counts II and III.

### iii.   Count IV – Tortious Interference Against Starwood Capital

Starman also argues that Count IV of the amended complaint, an alternative tortious interference claim against Starwood Capital, is time-barred and, therefore, futile. (D.I. 190 at

16–18)  Starman asserts, and CGHA does not directly dispute, that October 2014 is latest date that CGHA could have suffered an injury from the alleged tortious interference claim and that a three-year statute of limitation applies.  (*Id.*; D.I. 193 at 8–9)  CGHA argues, instead, that the statute has been tolled by the "time of discovery rule."  (D.I. 193 at 9)

A three-year statute of limitations applies to tortious interference claims.  *See SmithKline Beecham Pharms. Co. v. Merch & Co.*, 766 A.2d 442, 450 (Del. 2000) (citing DEL. CODE ANN. tit. 10 § 8106)).  The applicable statute of limitations "is not a 'discovery statute,' and the limitations period begins to run from the time the cause of action accrues . . . 'even if the plaintiff is ignorant of the cause of action.'"  *Id.* (citing DEL. CODE ANN. tit. 10 § 8106; *In re Dean Witter P'Ship Litig.*, 1998 WL 442456, at *4 (Del. Ch. Jul. 17, 1998)).  "As the party asserting that tolling applies, plaintiffs bear the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled."  *In re Dean Witter*, 1998 WL 442456, at *6.

The amended complaint contains no specific allegations demonstrating that the statute of limitations was tolled.  (D.I. 180, Ex. A at ¶¶ 100–07, 126–28, 204–06).  The amended complaint states, in conclusory fashion, that "None of the actions by Starwood Capital that were a significant factor in causing Woodman to breach the Management Agreement with CGHA were known to CGHA, or could have been known by CGHA in the exercise of reasonable diligence, prior to the time when CGHA first learned of those actions through discovery in this proceeding."  (*Id.* at ¶ 206)  The court is not required to accept such a legal conclusion as if it is a factual allegation, *see Twombly*, 550 U.S. at 555, and no other allegation in the amended complaint states a plausible factual basis supporting CGHA's conclusion.  (*See* D.I. 180, Ex. A at ¶¶ 100–07, 126–28, 204–06)  Accordingly, the amended complaint fails to allege specific facts supporting the conclusion that the statute of limitations for the proposed tortious interference

claim was tolled, which renders the claim time-barred and, therefore, futile.  *See In re Dean Witter*, 1998 WL 442456, at *6; *Winer Family Trust*, 503 F.3d at 331.  Accordingly, CGHA's motion to for leave to amend the complaint to add a tortious interference claim against Starwood Capital is denied.

## V.    CONCLUSION[11]

For the foregoing reasons, CGHA's motion for leave to file an amended complaint is GRANTED-IN-PART and DENIED-IN-PART without prejudice.  (D.I. 180)  An Order consistent with this Memorandum Opinion shall issue.

Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Opinion under seal, pending review by the parties.  In the unlikely event that the parties believe that certain material in this Memorandum Opinion should be redacted, the parties shall jointly submit a proposed redacted version by no later than **February 17, 2021**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure."  *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)).  If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Memorandum Opinion issued.

---

[11] On March 27, 2020, GCHA notified the court that its proposed amended complaint (D.I. 180, Ex. A) contained typographic errors and filed a revised version with a blackline showing the edits made to it, which do not change substantively the allegations contained therein.  (D.I. 188; D.I. 189)

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2).  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion.  Fed. R. Civ. P. 72(a).  The objections and responses to the objections are limited to ten (10) pages each. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: February 10, 2021

Sherry R. Fallon
United States Magistrate Judge