IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

COMPAGNIE DES GRANDS HOTELS
D'AFRIQUE S.A.,

    *Plaintiff*,

v.

STARMAN HOTEL HOLDINGS LLC
and STARWOOD CAPITAL GROUP
GLOBAL I LLC,

    *Defendants*.

No. 1:18-cv-00654-SB-SRF

---

Michael P. Kelly, Andrew S. Dupre, Sarah E. Delia, MCCARTER & ENGLISH, LLP, Wilmington, Delaware.

    *Counsel for Plaintiff*.

David Spears, Charlita Mays, Cynthia Chen, SPEAR & SIMES LLP, New York, New York.

    *Of Counsel for Plaintiff*.

David E. Ross, S. Michael Sirkin, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware.

    *Counsel for Defendants*.

Jeffrey L. Willian, Devora W. Allon, Gilad Bendheim, KIRKLAND & ELLIS LLP, New York, New York

    *Of Counsel for Defendants*.

---

**MEMORANDUM OPINION**

October 20, 2021

BIBAS, *Circuit Judge*, sitting by designation.

Courts respect the boundaries between corporations. When one company buys a second, they do not fuse into a single entity. So the contracts of one company do not bind the other. Compagnie des Grands Hotels d'Afrique tries to avoid this rule with an inventive agency theory. But a principal could not have directed an agent to make a contract if the principal did not exist when the agent signed that contract. And even the most inventive analysis cannot make Compagnie travel back in time. So I dismiss its claims.

## I. BACKGROUND

### A. The Cast

Compagnie owns the luxurious Royal Mansour Hotel in Morocco. D.I. 215 ¶ 33. In 1989, it leased the hotel to a local management company for thirty-five years. *Id.* ¶¶ 34–35. In exchange, this Manager paid rent to Compagnie and agreed to maintain the hotel at luxury standards. *Id.* ¶¶ 34–36. Both sides agreed to arbitrate any dispute. *Id.* ¶¶ 183.

Fast forward to 2005. Lehman Brothers and Starwood Capital decided to invest in real estate, so they formed a joint venture: Starman Hotel Holdings. Starman then bought the Manager and renamed it Woodman. *Id.* ¶¶ 38–40. After the deal, Woodman kept working for Compagnie under the original 1989 contract but as a wholly owned subsidiary of Starman (the Parent) and as an indirect subsidiary of Starwood Capital (the Grandparent). *Id.* ¶ 3.

The sale to Starman had a condition: Woodman had to delegate some of its hotel operations to Starwood Hotels & Resorts Worldwide, Inc., then an affiliate of the Grandparent. D.I. 215 ¶ 40. But under Woodman's agreement with Compagnie, it still had to pay for the hotel's repair and maintenance. *Id.* ¶¶ 42, 54.

## B. The Conflict

Well before Starman bought it, Woodman had struggled to maintain the hotel. The new owners hoped to turn things around, but they soon realized that the hotel was dead weight. *Id.* ¶¶ 58–61.

Then, the global financial crisis hit. Lehman Brothers went belly up. The Parent's cash flow dwindled. And the hotel—plus Woodman—languished, piling up losses. *Id.* ¶¶ 121–124. So the Grandparent told the Parent to stop funding Woodman's rent to Compagnie but to keep paying its other expenses, including to Starwood Hotels, the Grandparent's affiliate. *Id.* ¶¶ 125–126.

Compagnie tried to repossess the hotel, but Woodman "refuse[d] to return possession … except on terms that were unacceptable." *Id.* ¶ 188. So Compagnie brought Woodman to arbitration in London, seeking money for the missing rent and shabby management. Compagnie won. In its 2015 award, the arbitrator said Woodman had neglected its contractual duties and directed it to pay Compagnie fifty-nine million euros. D.I. 215 ¶ 28. But Woodman has not paid a dime because it is broke. *Id.* ¶¶ 160.

Compagnie now sues the Parent and Grandparent under the New York Arbitration Convention to cover the arbitral award, hoping they have more money. First, Compagnie seeks to pierce the corporate veil, arguing that the Parent is Woodman's

3

alter ego. *Id.* ¶¶ 162–79. Alternatively, Compagnie claims that the Parent must pay because Woodman was its agent. *Id.* ¶¶ 180–89. Then, to reach the Grandparent, Compagnie makes a two-tiered agency argument: (1) the Parent is responsible for Woodman's arbitration award on either of Compagnie's first two theories, and (2) the Grandparent owes because the Parent was *its* agent. *Id.* ¶¶ 190–97.

Defendants Parent and Grandparent move to dismiss the two agency claims, but not the alter-ego theory. D.I. 218. To decide this motion to dismiss, I take the facts in the complaint as true and ask if they plausibly allege a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Here, I grant the motion to dismiss.

## II. MOST OF THE CLAIMS AGAINST THE PARENT AND GRANDPARENT FAIL

Agency law alone does not make the Parent responsible for a pre-existing contract made by its subsidiary Woodman. So I will dismiss Compagnie's agency claim against the Parent. Its claim against the Grandparent fails for the same reason. Even if Compagnie pierces the corporate veil between the Parent and Woodman, the Grandparent cannot play principal to the combined entity's pre-existing contract.

### A. I need not follow the magistrate judge's reasoning

Compagnie urges me to defer to the magistrate judge's analysis of its two agency claims. D.I. 224, at 12. Though I can consider the magistrate's reasoning, I need not follow it. And I will not here.

Earlier in this litigation, Compagnie moved to amend its complaint to add its two agency claims. D.I. 180. Defendants opposed this amendment under Rule 15(a), arguing that those claims were meritless. D.I. 190, at 11–16; *see also* Fed. R. Civ. P.

15(a). But a magistrate judge disagreed and allowed the amendment. D.I. 213, at 14–18. Because Rule 15(a) motions to amend use the same standard as Rule 12(b)(6) motions to dismiss, Compagnie argues that the earlier decision precludes dismissal of its agency claims. D.I. 224, at 12; *see City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).

The law-of-the-case doctrine is no bar here. True, a court should reconsider its decisions only in "extraordinary circumstances." *In re Pharm. Benefit Mgrs. Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (citations omitted). But courts can always reconsider issues that are "avowedly preliminary or tentative." *Council of Alt. Pol. Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999) (citations omitted). Rule 15(a) decisions are both. *See United States ex rel. Petratos v. Genentech, Inc.*, 141 F. Supp. 3d 311, 315 n.2 (D.N.J. 2015). Plus, even an excellent magistrate's decision does not displace the duty of an Article III judge to reach his own judgment. *See* 28 U.S.C. § 636(b)(1). So in reviewing this motion to dismiss, I do just that. Magistrate judges are helpful adjuncts to Article III courts, not substitutes for them.

### B. Compagnie has no agency claim against the Parent

Compagnie says that the Parent is liable for Woodman's arbitral award because Woodman was its agent. True, a parent company is not usually liable for contracts signed by its subsidiary. *Bhole, Inc. v. Shore Invs.*, 67 A.3d 444, 452 n.35 (Del. 2013) (citations omitted). Yet there is a narrow exception to this rule. A parent may be liable for its subsidiary's breach of contract where the subsidiary works on behalf of the

5

parent and this "arrangement [is] … relevant to the [subsidiary's] … wrongdoing." *Phoenix Can. Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988).

But the exception applies only if the parent existed at the time the subsidiary signed the contract: a parent company can be held liable only for "conduct shown to be instigated by" it. *C.R. Bard Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998) (internal quotation marks omitted). Here, Woodman signed the contract decades before the Parent was formed. D.I. 215 ¶¶ 2, 38. So Compagnie's claim fails. *See Mabon, Nugent & Co v. Tex. Am. Energy Corp.*, 1988 WL 5492, at *4 (Del. Ch. Jan. 27, 1988).

But that does not mean that any corporate-structure subterfuge goes unpunished. Compagnie may still try to hold the Parent accountable under its alter-ego theory, which is not before me now. D.I. 215 ¶¶ 162–79.

**C. Compagnie's claim against the Grandparent fails for the same reason**

Compagnie also tries to enforce the arbitral award against the Grandparent. To do so, it must plausibly plead that the Parent is somehow liable for Woodman's breach. Compagnie does this by arguing that the Parent is Woodman's alter ego. D.I. 215 ¶¶ 162–79; D.I. 224 at 17; *see Microsoft Corp. v. Amphus, Inc.*, 2013 WL 5899003, at * 6 (Del. Ch. Oct. 31, 2013). Defendants do not move to dismiss the alter-ego claim, so I assume, for now, that it is right: the Parent was liable as Woodman's alter ego.

But to reach the Grandparent, Compagnie must do more: it must also plausibly plead that the Grandparent forced Woodman to make and break a promise. *See Mabon*, 1988 WL 5492, at *4. Woodman promised to be bound by any arbitration

proceeding. D.I. 190-3 at 54. But it made that promise in 1989, before the Grandparent came into being. D.I. 215 ¶¶ 2, 29. So it is implausible that the Grandparent forced it to promise then. Plus, by the time Woodman breached its promise to abide by the arbitral award, the Grandparent no longer controlled it. *Id.* ¶¶ 143, 149. So the Grandparent could not have forced Woodman to breach. Both flaws are fatal, so I will dismiss this claim with prejudice.

\* \* \* \* \*

I dismiss with prejudice Compagnie's agency claims against the Parent and the Grandparent. But it still has a chance. Compagnie can continue with its claim that the Parent is liable for part or all of Woodman's arbitration award as its alter ego.